## Madden v. City of York

*Alan N. Linder*, for plaintiffs.
*Harry C. Elsesser, Jr.*, for respondent.

ATKINS, P. J., June 1, 1972.—Petitioners, Robert Lee Madden and Mae Frances Mincer, filed a petition with this court asking leave to institute an action of trespass against defendants without advancing the docket costs and the costs of service of process on defendants. The county commissioners have resisted this request wherein they take the position that plaintiffs should not be permitted to proceed without paying the costs.

Interrogatories were filed and answered, and there were also depositions that petitioners filed. From this record we have no hesitancy to conclude that at least as of the time the petition was filed, petitioners were indigent and had no funds with which to advance the costs. There is nothing in the record to show that their condition is changed since the time of the filing of the petition.

As long ago as 1494, by statute 11, Henry VII, the English Parliament enacted as follows:

"Prayen the commons in this present parliament assembled, That where the king our sovereign lord, of his most gracious disposition willeth and intendeth indifferent justice to be had and ministered, according to his common laws, to all his true subjects, as well to the poor as rich, which poor subjects be not of ability nor power to sue according to the laws of this land, for the redress of injuries and wrongs to them daily done, as well concerning their persons and their inheritance, as other causes: For remedy whereof, in the behalf of the poor persons of this land, not able to sue for their remedy after the course of the common law; be it or-

dained and enacted by your highness, and by the lords spiritual and temporal, and the commons, in this present parliament assembled, and by authority of the same, That every poor person or persons, which have, or hereafter shall have cause of action or actions against any person or persons within this realm, shall have, by the discretion of the chancellor of this realm for the time being, writ or writs original, and writs of subpoena, according to the nature of their causes, therefor nothing paying to your highness for the seals of the same, nor to any person for the writing of the same writ and writs to be hereafter sued; and that the said chancellor for the time being, shall assign such of the clerks which shall do and use the making and writing of the same writs, to write the same ready to be sealed, and also learned counsel and attorneys for the same, without any reward taken therefor; and after the said writ or writs be returned, if it be afore the king in his bench, the justices there shall assign to the same poor person or persons, counsel learned, by their discretions which shall give their counsels, nothing taking for the same: And likewise the justices shall appoint attorney and attorneys for the same poor person or persons, and all other officers requisite and necessary to be had for the speed of the said suits to be had and made, which shall do their duties without any reward for their counsels, help and business in the same: And the same law and order shall be observed and kept of all such suits to be made afore the king's justices of his common place, and barons of his exchequer, and all other justices in the courts of record where any such suits shall be."

By statute of April 7, 1807, the Legislature of Pennsylvania commanded the Justices of the Supreme Court of Pennsylvania to examine and report to the next legislature which of the English statutes were

in force in the Commonwealth and which of those statutes in their opinion ought to be incorporated into the laws of the Commonwealth. The report mandated by that statute of 1807 was duly filed with the legislature and is reported in the Appendix of Volume 3 of Binney's Reports, where at page 617, it is stated that the statute of 11, Henry VII, quoted above is to be incorporated in the statute laws of Pennsylvania.

In Willis v. Willis, 20 Pa. Dist. Reports 720, the late Mr. Justice Walling, who was then President Judge of the Court of Common Pleas of Erie County, said:

"In our opinion, a plaintiff, whether resident or non-resident, who comes into court with a prima-facie case cannot be turned out of court because of inability, through poverty, to give security for costs. Such person, when a resident, may prosecute a suit in this state in forma pauperis. The ancient English statute to that effect has been held to be still in force here."

This concept of permitting impecunious litigants to proceed without payment of costs has been recognized by the legislature in the Act of June 16, 1836, P. L. 715, sec. 28, 5 PS §72, where it is provided that in cases of compulsory arbitration one against whom an award has been made and who was not the party by whom the rule of reference has been taken out, may be excused from paying costs on appeal if unable to do so by reason of poverty. It has also been held that when poverty is made the test of inability to pay the character of that poverty is to be determined by judicial discretion: Noland v. Noland, 69 D. & C. 6.

## ORDER

And now, to wit, June 1, 1972, it is ordered, adjudged and decreed that the rule to show cause why the above-mentioned petitioners should not proceed in forma pauperis is hereby made absolute, and they are permitted to so proceed.